ALDIS *vs.* HULL.

The Act directing proceedings against absconding or concealed debtors, provides that if execution shall issue against the goods and chattels of the principal debtor, in possession of the trustee or trustees, and a return be made by any proper officer on such execution, that such trustee or trustees refused or neglected to expose such goods and chattels, or to pay the amount of such execution, if there be sufficient in his, her or their hands and possession, the Court shall, *on motion* of the creditor, grant a rule to shew cause why execution should *not* issue on such judgment against such trustee or trustees, his, her or their proper goods and estate.—And a *scire facias* cannot be substituted in the place of such motion—the creditor cannot, in such case, have a remedy by *scire facias.*

ASA ALDIS, the present plaintiff, commenced his action before the County Court in September, 1811, against Justin Wells, an absconding or concealed debtor, and summoned Samuel Hull, the present defendant, as his trustee. Hull, the trustee, at the same term of the Court, made a disclosure on oath; and the Court adjudged him to be a trustee of Wells, the absconding debtor; and found that he had in his possession goods and chattels, rights and credits of the said Wells to the amount of two hundred dollars. And Aldis, at the same term, obtained a regular judgment against Wells, the absconding debtor, for $51 84 damages, and $13 29 costs of suit; and took out execution thereon, as awarded by the Court, against the goods and chattels of the said Wells, in the possession of the said Hull the trustee, dated the 30th day of September, 1811, and delivered the same to a proper officer, who made return thereon that he had demanded of Hull the trustee, to expose the goods & chattels of the s'd Wells, in his possession, for the purpose of satisfying said execution; and that he neglected and refused to expose such goods and chattels, or to pay the amount of said ex_ ecution. Whereupon, Aldis brought a *scire facias* in the County Court, reciting the proceedings in the suit against Wells, in substance as above stated, and praying for an execution against Hull the trustee, of his own proper goods, &c.

To the *scire facias,* Hull the trustee pleaded, that the plaintiff ought not to have execution thereof against him, for that, in the original action he had disclosed, that he held in his own name, a note of hand, for the sum of $600 against one R. W. of Georgia in said County of Franklin, secured by a mortgage on a certain lot of land

in said Georgia, and that he held in trust for the said Justin Wells two hundred dollars of said note; on which account, and none other, the said Court adjudged him to be the trustee of Wells the absconding debtor, to the amount of two hundred dollars.—That since the disclosure aforesaid, and since the decision of the Court as aforesaid, he had commenced an action against the said R. W. on the note aforesaid—had recovered judgment and taken out execution thereon; on which the said R. W. had been committed to prison.—That he was insolvent, and had been legally discharged from his imprisonment on said execution, upon taking the oath in such case provided by law; and that said execution yet remained wholly unpaid and unsatisfied. And further, that Robert Bowne of the City of New-York, claiming the said lot of land so mortgaged to him the defendant, to secure the payment of said note as aforesaid, had brought an action of ejectment for the recovery of the same against him the defendant; and had since the disclosure aforesaid, and since the decision of the Court thereon as aforesaid, recovered the seizin and possession of said lot, in that action of him the defendant, on an elder and better title; whereby the said sum of $200, which he had holden in trust for the said Wells as aforesaid, was wholly lost.

To this plea the plaintiff demurred, and had judgment in the County Court for his execution; from which judgment the defendant entered an appeal to this Court. The cause now came on to be heard on the same pleadings.

*Turner,* for the plaintiff. The finding of the Court, in a suit against an absconding debtor—that the trustee has goods and of the absconding debtor's in his hands and possession, which is entered and recorded in the cause, is, in effect, a judgment, and is conclusive against the trustee for the amount found in his possession by the Court. The trustee has an opportunity on his examination, to disclose all the circumstances relative to the goods, chattels, rights and credits of the principal debtor in his hands or possession, on which the Court are competent to decide. If he neglect so to disclose, he is forever thereafter precluded; he cannot go back of the judgment, or finding of the Court, which is in the nature of a judgment. The trustee, in such case, can no more go back of the find-

ing of the Court, and object to the issuing of an execution against his own body, goods, and estate, after having neglected to expose the goods of the principal debtor found in his possession, or to pay the amount found in his possession, than though he had been a par- ty to the principal judgment : he cannot excuse himself for any loss which may have happened after the disclosure and finding of the Court.

*Swift,* for the defendant. The trustee cannot be holden for the amount found in his hands, in all events that may happen. He is bound to keep the property, and to perform the trust with all due diligence; but, if a loss happen, by inevitable accident, without any fault of his, he cannot be held accountable; but such loss being shewn on a *scire facias,* will be a good and sufficient reason why execution should not issue against the body and estate of the trus- tee. The statute gives the trustee an opportunity to shew cause, but why give him this opportunity if no cause can be shewn ?

*The Court* said they would consider the case, but suggested that a *scire facias* was not the proper remedy in this case, but a rule to shew cause why the plaintiff should not have execution against the trustee.

CHIPMAN, Ch. J. afterwards delivered the opinion of the Court. The plaintiff's counsel are so far correct on the first point, that although the decision of the Court, on the disclosure of the trustee, or on other proof made against him, is not strictly a judgment, yet it partakes so far of the nature of a judgment, that the trustee is con- cluded by it to that time. He cannot be permitted to shew in his discharge, or in diminution of the funds found in his possession, any matter which existed at the time of his examination, and which it was then in his power to shew; but the position of the plaintiff's counsel cannot be supported further than this. Let us consider the trustee's situation as bailee or trustee of the original debtor, whether under an express or implied contract. The law imposes upon the bailee or trustee certain duties; he must use due diligence and care in keeping or using the thing bailed or intrusted to his care and keeping, according to the nature of the bailment or trust; and for any default of such due diligence and care, he is answerable to the bailor or *cestueque trust.* But if the thing be lost or de-

*Franklin,*
December,
1814.

Aldis
*vs.*
Hull.

stroyed by inevitable accident, without any default in him, he is discharged. In this action against an absconding or concealed debtor, by the decision of the Court, that the trustee has in his possession the goods or estate of the principal debtor, the bailor or *cestueque trust* is changed; the plaintiff, the creditor, is substituted in place of the original bailor or *cestueque trust*. But no other change is thereby effected: no new duties, or other conditions are thereby imposed on the trustee. To every claim of that kind it is a sufficient answer for him to say *non in haec foedera veni,* I entered into no such agreement. He is still holden to use the same care, diligence and good management, and no more. The same inevitable accident taking place after the disclosure, will excuse or discharge him in his new relation, which would have been a good excuse or discharge against the original bailor or *cestueque trust*; and would be a good cause to be shewn on his part why execution should not issue against his body or against his own proper goods and estate.

Although the Court do not decide on the defendant's plea, I will briefly observe that the failure of the security does not sufficiently appear to have happened after the disclosure. And the *scire facias,* if it be a proper remedy, does not sufficiently set forth the record. It ought to set forth the whole disclosure or proof on which the Court decided, and which the statute directs to be recorded, for the purpose of settling thereafter the rights of the parties. I should not be ready to admit, that a record merely that the person summoned, was adjudged to be a trustee, to a certain amount, without a record of the examination or proof on which the adjudication was made, would hold the trustee accountable for any thing.

But the ground on which the Court decide is, that a *scire facias* is not the proper legal remedy in this case. It will be kept in view, that this proceeding against the trustee of an absconding or concealed debtor is not a common law proceeding, or governed by common law precedents: it is with us a mere statute provision, and the proceedings are regulated and directed by the statute. The process of foreign attachment, founded on the custom of London, was indeed somewhat similar to our statute provision—at least it had the same end in view; but it was a local custom, and not a part of the general common law of the Kingdom.

It is true, that at common law, a *scire facias*, to have execution of a judgment or-recognizance, which is a judgment with a defeasance, lies in the same Court where the judgment is of record. But in the case under consideration, the proceedings are regulated by the 5th Section of the Act directing proceedings against the trustees of absconding or concealed debtors; by which it is provided, "That if the trustee or trustees shall appear at the Court, and it shall be made evident by his, her or their oath, or by other proof, that the trustee or trustees had monies, goods, chattels, rights or credits of the principal debtor in his, her or their possession, at the time of the service of such process, or at any time since, a record thereof shall be made, &c."—that is, as I understand it, a record shall be made of the whole disclosure of the trustee, as made on oath, or of the proof produced by the plaintiff, the creditor, and that for the very good reason which I have before mentioned—for the purpose of settling the future rights of the parties. "And such trustee or trustees shall be liable to the plaintiff for the money, goods, chattels, rights and credits so found in his, her or their hands or possession, to the amount of the judgment recovered against the principal debtor, if so much there be, and execution shall issue on the judgment so recovered against the goods and chattels in the possession of such trustee or trustees."

The finding of the Court against the trustee is nowhere called a judgment, and may with propriety be called an inquest; and is a foundation for future proceedings, as provided by the statute. The 6th Section points out the special mode of proceeding which the plaintiff must pursue in order to obtain the effect of his judgment against the principal debtor, out of the effects in the hands of the trustee. "That if execution shall issue against the goods and chattels in the possession of the trustee or trustees, and a return be made by any proper officer on such execution, that such trustee or trustees, refused or neglected to expose such goods and chattels, or to pay the amount of such execution, if there be sufficient in his, her or their hands or possession, the Court shall on the motion of the creditor, grant a rule to shew cause why execution should not issue against such trustee or trustees or their goods and estate; and upon affidavit of the service of such rule on the trustee or trustees,

*Franklin,*
*December,*
*1814.*

Aldis
*vs.*
Hull.

and no sufficient cause being shewn to the contrary, such execution may be awarded."

A *scire facias* would not lie at common law, in this case, from any analogy, and the statute does not give it; but specially provides another remedy, and that remedy must be pursued: A remedy much better adapted to the nature of the case, and very wisely adopted instead of a *scire facias.* A *scire facias* would, as we see in this very case, often be attended with that delay and expense incident to the common course of judicial proceedings, and frequently more than exhaust the whole subject of litigation. The mode pointed out by the statute, is less expensive, more expeditious, and free from the technical forms and niceties of special pleading. It gives a fair opportunity to examine at large into the real justice of the case, which will often depend on a variety and complication of circumstances. The trustee will be at liberty in shewing cause, to avail himself of every fact and legal matter, to discharge him from further liability either in whole or in part, by proper documents and affidavits, which the creditor may controvert in the same way; and the Court will be enabled to decide agreeably to the justice of the case.—It is much the most advantageous for all parties—certainly so for the plaintiff.

In this view of the case, (and we think it the only legal view which can be taken of it) the Court are clearly of opinion that a *scire facias* is not the proper remedy in this case. There must therefore be

Judgment for the defendant.